OPINION OF THE COURT
Ruth Moskowitz, J.
In this case, the court is asked to decide whether a second indictment filed more than six months after an indictment based on the same alleged criminal conduct was dismissed as defective due to an insufficient quorum in the Grand Jury must be dismissed because the People were not ready for trial within the applicable statutory period.
On June 20, 1984, indictment number 4161/83 was filed, charging the defendants herein with conspiracy in the fifth degree (Penal Law § 105.05), with attempted grand larceny in *269 the second degree (Penal Law §§ 110.00, 155.35) and with five counts of insurance fraud in the first degree (Penal Law § 176.20). Motions were subsequently served by the defendants, including a motion to dismiss, and a request that the court inquire into the constitution and vote of the Grand Jury to ascertain if the requirements of CPL 210.35 had been met. The People opposed the motion to dismiss based on this ground.[1]
On January 25, 1985, this court, after having reviewed the submitted papers, directed the People to turn over to the court and to the defendants copies of the Grand Jury minutes. In addition, this court directed the Assistant District Attorney to provide the court with the Grand Jury attendance records so that a determination could be made as to whether or not there was a legally sufficient quorum of grand jurors who heard substantially all of the evidence which was presented against the defendants. The People allege it was only on January 28, 1985, as they began to review the minutes and the Grand Jury attendance records, that they learned that a mere seven jurors had heard all of the evidence presented.
Although the case had originally been adjourned until March 19, 1985 for the court’s decision on the motions, the matter was advanced at the People’s request to February 26, 1985, since the People had apparently decided to "acquiesce in the defendants’ motion to dismiss and to request leave to represent.” On that date, the court granted defendants’ motion to dismiss on the ground that an insufficient number of grand jurors had heard the evidence presented and granted the People’s application for leave to re-present. In doing so, this court expressed its concern over the delay in prosecution. The case was then adjourned to April 1, 1985, pending re-presentation. On April 1, 1985, the People were not yet ready to proceed with the new indictment and the matter was again adjourned. On April 19, 1985, the Grand Jury voted a true bill and returned indictment number 1300/85, charging defendants with conspiracy in the fifth degree (Penal Law § 105.05), with attempted grand larceny in the second degree (Penal Law §§ 110.00, 155.35), with 16 counts of insurance fraud in *270 the first degree (Penal Law § 176.20) and with 16 counts of falsifying business records in the first degree (Penal Law § 175.10). The indictment was filed on that date and defendants were directed to appear for arraignment on April 22, 1985, at which time the People announced their readiness on the record. This was the first time that the People announced their readiness on either indictment. The defendants were arraigned on the new indictment on May 3, 1985. On that date the People announced for the second time on the record that they were ready for trial. Motions were served and filed on July 15, 1985. Defendant Alexander’s motion papers, in which defendant Gelfand joined, requested, inter alia, dismissal of the indictment pursuant to CPL 210.20 (1) (g) on the ground that the People had not been ready to proceed within the time set forth by CPL 30.30 (1) (a).
The starting point for an analysis of a defendant’s speedy trial claim under CPL 30.30 is the date on which the criminal action was commenced. Where a felony is charged, unless the prosecution is ready for trial within six months of the commencement of the criminal action, the indictment must be dismissed. CPL 1.20 (17) provides that a criminal action is commenced by the filing of an accusatory instrument against a defendant in a criminal court. If, during the course of the action, more than one accusatory instrument is filed, the action is deemed to have commenced on the date when the first of such accusatory instrument was filed. Even if the original accusatory instrument has been replaced or superseded, the time computation commences on the date when the first accusatory instrument was filed. Indeed, the Court of Appeals in People v Lomax (50 NY2d 351 [1980]) has held that continuity of a criminal action remains intact through the issuance of successive indictments where an indictment has been dismissed and the defendant is subsequently brought back into court on an entirely new indictment. Thus, the present indictment may be considered to have related back in time to the filing of the initial indictment.
It is conceded by both defendants and the prosecution that the criminal action commenced with the filing of the original indictment on June 20, 1984. It is also conceded that the People announced their readiness for the first time on April 22, 1985, three days after the filing of the second indictment. On that date, the clock stopped running for purposes of CPL 30.30. Since the People announced their readiness more than six months after the commencement of the criminal action, *271 they have the burden of proving that certain periods of time should be excluded from the court’s speedy trial computations so as to bring this case within the six-month statutory limitation period. This court must therefore determine what portion of excludable time accruing under the initial indictment should be charged to the continued prosecution under the second indictment.
The People state that of the total 306 days which elapsed before their statement of readiness was made, only 52 days are chargeable to them. The People contend that most of the remaining 254 days are excludable under CPL 30.30 (4) (a) ("a reasonable period of delay resulting from * * * pre-trial motions * * * and the period during which such matters are under consideration by the court”) or under CPL 30.30 (4) (b) ("the period of delay resulting from a continuance granted by the court at the request of, or with the consent of, the defendant or his counsel”).[2] The defendants maintain that any delays due to defense adjournments and pretrial motions addressed to the original indictment should not be excluded from the computation of speedy trial time, since these delays were not the cause of the People’s failure to be ready for trial, and since nothing done by the defendants prevented the People from obtaining a jurisdictionally valid indictment.
Were the dismissal of the original indictment a result of a judicial determination that there was an evidentiary insufficiency in the Grand Jury proceeding (see, e.g., People v Lomax, 50 NY2d 351 [1980], supra) or an erroneous charge. (see, e.g., People v Stephens, 113 Misc 2d 1006 [Sup Ct, Kings County 1982, Egitto, J.]) or to serve the convenience of a prosecutor wishing to replace it with a superseding indictment (see, e.g., People v Cruz, 111 AD2d 725 [1st Dept 1985], modfg 123 Misc 2d 316 [Sup Ct, NY County 1984, Ryp, J.), this court might be inclined to accept the People’s argument and to exclude from the computation of the time within which the People must be ready those periods of delay resulting from defense adjournments and from pretrial motions addressed to the original indictment.
However, in this case, the original indictment was found to have been fatally defective ab initio. The People could never *272 have been deemed ready for trial, since they did not have a jurisdictionally sufficient accusatory instrument on which to proceed. (See, People v Colon, 59 NY2d 921 [1983], revg 112 Misc 2d 790 [App Term, 1st Dept 1982], revg 110 Misc 2d 917 [Crim Ct, NY County 1981, Atlas, J.].) Not having filed an accusatory instrument which conferred upon the court the requisite jurisdiction to try the defendants, the People could never have been able to proceed to trial under the original indictment.[3]
In People v Colon (supra), defendant’s speedy trial rights were found to have been violated where the People failed to convert three misdemeanor complaints into informations within the applicable statutory period. The trial court held that the People could not be ready for trial within the statutory period if they had not converted the complaints to jurisdictionally sufficient informations within that time period. The Court of Appeals ruled that since the delay in conversion was not a result of defendant’s absence, the excludable periods permitted by CPL 30.30 (4) (c) would not apply. Similarly, in People v Sturgis (38 NY2d 625 [1976]), the Court of Appeals held that the absence or unavailability of a defendant against whom a felony complaint had been filed did not prevent the People from procuring and filing a subsequent indictment and that, consequently, the delay in indicting did not qualify for an exclusion under CPL 30.30 (4) (c).[4] Since an accusatory instrument sufficient to confer jurisdiction on the court was not filed within six months of the criminal action, the People were found not to have been ready for trial within that period.
The defendants have urged the court to extend the rationale of People v Colon (supra) and People v Sturgis (supra) to the instant case so as to require the People to obtain a jurisdictionally sufficient accusatory instrument before attempting to exclude delays due to defense motions and adjournments. They contend that such time is not excludable if it does not *273 prevent the People from obtaining accusatory instruments sufficient for trial. The People, on the other hand, claim that the defendants’ reliance on Sturgis and Colon is misplaced, as those cases addressed policy concerns unique to situations in which defendants are absent, as opposed to the situation in this case, where defendants have made pretrial motions or requested adjournments.
This court reads Sturgis and Colon (supra), however, as not necessarily requiring the People to trace their lack to readiness to the defendant’s actions in order to determine whether certain periods are excludable. Rather, the focus must be on the conduct of the prosecution.
In People v Bratton (65 NY2d 675 [1985], affd for reasons stated in 103 AD2d 368 [2d Dept 1984]), the Court of Appeals impliedly (by affirming based on the Second Department opinion) declined to view Sturgis inflexibly. In the Bratton case, the County of Westchester had a policy of not indicting absent defendants. The court held that in jurisdictions where the People had a systematic policy of not indicting absent defendants, and had exercised due diligence in attempting to locate an absent defendant, the People would not be charged with the period of the absence. Sturgis would not be applicable in such jurisdictions, providing the delay was not the result of "neglect or administrative inefficiencies in the prosecutor’s office” (103 AD2d 368, 371). The court reasoned that Sturgis emphasized prosecutorial "inertia or inefficiency”: "It was never the intent of the Legislature to require dismissal of criminal charges when the delay in readiness cannot be attributed to the People’s negligence or fault or is beyond their control (People v Gruden, 42 NY2d 214). The six-month ready rule was meant to eliminate unjustified delays, to impose upon the People a standard of diligence and blamelessness, and to provide a disincentive for delay” (103 AD2d 368, 373).
It would seem, therefore, that while CPL 30.30 (4) (c) generally excludes from the computation of the time within which the People must be ready for trial "the period of delay resulting from the absence or unavailability of the defendant,” that period of time is not necessarily always excludable. The focus must be on the conduct of the prosecutor, who "should not be permitted to seize upon the circumstance of the defendant’s unavailability as causation for a delay which in fact 'resulted from’ its own inefficiency.” (Preiser, Supplementary *274 Practice Commentaries, McKinney’s Cons Laws of NY, Book 11A, CPL 30.30, 1986 Pocket Part, p 46.)[5]
This being the case, the question remains whether the exclusionary periods of CPL 30.30 (4) (a) ("a reasonable period of delay resulting from * * * pre-trial motions * * * and the period during which such matters are under consideration by the court”) and CPL 30.30 (4) (b) ("the period of delay resulting from a continuance granted by the court at the request of, or with the consent of, the defendant or his counsel”) are always excludable or whether the court instead may focus on the conduct of the People. The People have cited several cases which support their contention that any delay resulting from a defendant’s pretrial motions is excludable under CPL 30.30 (4) (a) with respect to a re-presented indictment after the original indictment has been dismissed for Grand Jury deficiencies. In People v Buckmon (109 AD2d 846 [2d Dept 1985]), the period which elapsed between defendant’s pretrial motion to dismiss the original indictment for legal insufficiency of the evidence and the order which granted that motion was held to be excludable, and therefore not chargeable to the People. Similarly, in People v Brown (113 AD2d 812 [2d Dept 1985]), the original indictment was dismissed for legal insufficiency and the defendant was subsequently reindicted. The court excluded both the delay caused by the defendant’s pretrial motion (which resulted in dismissal of the original indictment) and the period from the filing of the second indictment until the first court date after arraignment.
Notwithstanding the People’s reliance on these cases, this court is of the opinion that Brown and Buckmon (supra) are distinguishable from the instant case in that the nature of the Grand Jury defect in this case differs from the defects in Brown and Buckmon. In the Second Department cases, the initial indictments were dismissed on the ground of insufficient Grand Jury evidence (CPL 210.30), whereas the dismissal in the instant case was a result of a determination that fewer than 12 jurors concurred in the finding of the indictment (CPL 210.35 [3]).
Because of the nature of the defect in the Grand Jury proceeding and the manner in which this matter was pre *275 sented to the first Grand Jury, this court finds itself obliged to examine the conduct of the People in order to determine whether or not the People should be charged with the periods of time ordinarily excludable by CPL 30.30 (4) (a) and (b).
In complex economic crime cases, the presentation to the Grand Jury is almost always continued beyond one day. Consequently, the composition of the panel may vary on succeeding days. For that reason, a procedure is invariably followed whereby the Assistant District Attorney in charge of the Grand Jury submission can ascertain which of the grand jurors are eligible to vote. (See, People v Colebut, 86 Misc 2d 729 [Sup Ct, NY County 1976, Rothwax, J.].) Proper procedure dictates that the presenting prosecutor, immediately prior to the Grand Jury vote, instruct the Grand Jury on the quorum requirements for voting, i.e., that those grand jurors who join in an indictment must have been present and must have heard the essential and critical evidence. The Assistant District Attorney must then indicate the names of those grand jurors who are eligible to vote. A failure on the part of the Assistant District Attorney to instruct the Grand Jury in this manner impairs the integrity of the Grand Jury and prejudices the defendant to such an extent that dismissal of the indictment will be mandated on the ground that CPL article 190 has been violated. (People v Colebut, 86 Misc 2d 729, 734, supra.)
The deficiency in the charge to the Grand Jury which returned the original indictment is so blatant that a comparison of the Grand Jury minutes of the first presentation (indictment number 4161/83) and those of the second presentation (indictment number 1300/85) is worthy of mention. When the first presentation was made, the Grand Jury was charged as follows:
"Mr. Karel: Again, Mr. Foreman, are there least sixteen jurors present?
"Foreman: Yes, there is [sic].
"Mr. Karel: I would remind you, if you have not heard substantially all of the evidence in this case, that you may not deliberate in this matter” (Grand Jury minutes, June 13, 1983, p 40).
To be contrasted is the charge in the second presentation (indictment number 1300/85) which was properly conducted as follows:
"Mr. Polonsky: * * * I remind you, ladies and gentlemen, *276 that if you have not heard all the evidence presented in this case then you may not deliberate and vote. The following jurors missed the presentation of evidence: [jurors named]. They may not deliberate and vote on this case. That’s seven Jurors. I ask, Mr. Foreman, are the remaining 16 Jurors all present?
"Foreman: Yes.
"Mr. Polonsky: Only the Jurors whose names I did not call may deliberate or vote.” (Grand Jury minutes, Apr. 19, 1985, p 7 [jury charge].)
It defies credulity that the Assistant District Attorney who presented the first matter to the Grand Jury was unaware that there was an insufficient number of grand jurors present to vote an effective indictment which would render the Grand Jury proceeding, and consequently, the indictment, defective.[6] On every day of the lengthy presentation of this case, the attendance of the grand jurors was recorded. Nevertheless, ignoring the fact that a majority of the members of the Grand Jury were not present to hear substantially all of the evidence presented, the People proceeded to go forward to allow a jurisdictionally defective indictment to be voted and filed, without any concern for the most rudimentary requirement regarding the constitution and quorum of the Grand Jury. The Assistant District Attorney cannot have been unaware of the insufficient quorum and consequent invalidity of the initial indictment.
The court must, therefore, question the good faith of the People in attempting to "pass off” an obviously defective indictment. This is not a mere technical irregularity which might call for sustaining the validity of the indictment.[7] *277 Rather, a valid and sufficient indictment is required in order to prosecute a defendant for a felony.[8] The existence of a valid accusatory instrument is a nonwaivable jurisdictional prerequisite to a criminal prosecution. (See, People v Case, 42 NY2d 98 [1977], citing People v Harper, 37 NY2d 96, 99 [1975].)
The People must be charged with knowledge of the defective Grand Jury proceeding since only they had knowledge of what had occurred before the Grand Jury. Being officers of the court, they had the responsibility of ensuring that a valid indictment was obtained in accordance with the applicable law. (See, Code of Professional Responsibility, DR 7-103.) Although the People were indeed put on notice of a potential defense challenge to the propriety of the Grand Jury proceedings, upon receipt of the defendant’s omnibus motions in October of 1984, the People, perhaps in hopes that the defect would slip by the scrutiny of the court did nothing to correct the defect, but instead, waited until February 26, 1985 before consenting to a dismissal of the original indictment.[9]
Under the facts and circumstances of this case, any time originally chargeable to the defendants because of pretrial motions addressed to the initial invalid indictment was viti *278 ated by the People’s knowledge of the imperfect presentation. Such delay will not be excluded from the court’s current computation of CPL 30.30 time.[10] Likewise, any time originally excluded due to the court’s resolutions of motions addressed to that invalid indictment will not be excluded. All such delays, which occurred while the People had knowledge of the defective indictment, will not carry over in favor of the People upon their filing of the second indictment based upon charges in the first indictment. Having determined that the People could never have been deemed ready for trial on an invalid indictment, this court finds that the CPL 30.30 time chargeable to the People ran uninterrupted from the filing of the initial defective indictment until the filing of the second indictment. Since the People’s first statement of readiness was not made until three days after the filing of the second indictment, a period in excess of six months from commencement of the action against defendants, this indictment must be dismissed.
The court must also dismiss the new counts of the second indictment. While under the original indictment, defendants were charged with one count of conspiracy in the fifth degree (Penal Law § 105.05), one count of attempted grand larceny in the second degree (Penal Law §§ 110.00, 155.35) and five counts of insurance fraud in the first degree (Penal Law *279 § 176.20), the second indictment, which was based on the same alleged criminal transaction, charged defendants with one count of conspiracy in the fifth degree (Penal Law § 105.05), one count of attempted grand larceny in the second degree (Penal Law §§ 110.00, 155.35), 16 counts of insurance fraud in the first degree (Penal Law § 176.20) and 16 counts of falsifying business records in the first degree (Penal Law § 175.10). Thus, there are 11 additional counts of insurance fraud and 16 additional counts of falsifying business records which were not set forth in the original indictment. All of the additional charges of the second indictment are derived from the charges contained in the original indictment so as to fall within the definition of a single "criminal action” as defined in CPL 1.20 (16).[11]
The People concede that the counts charging defendants with falsifying business records advance a new theory of the case. As such, these counts must be dismissed. (See, People v Sinistaj, 111 AD2d 41 [1st Dept 1985], lv granted 65 NY2d 930 [1985].) Although characterized by the People as an "elaboration” of the insurance fraud counts of the first indictment, the additional insurance fraud counts of the second indictment set forth facts which differ from those of the original indictment and which, nevertheless, were known to them at the time of the initial indictment. Moreover, each of the insurance fraud counts of the instant indictment charges that defendants’ activities were part of a "common scheme and plan”, which theory was not set forth in the original indictment. Having failed to present these counts within the applicable time period, these counts must likewise be dismissed. (See, People v Cruz, 111 AD2d 725 [1st Dept 1985], supra.)
Inasmuch as the defendants’ motion to dismiss the indictment on CPL 30.30 grounds is granted, this court deems it unnecessary to decide the defendants’ remaining motions.

. Although the People have characterized this aspect of defendant Gelfand’s omnibus motion as "boilerplate,” this court has infrequently come across omnibus motions in which defendant requests that the court inquire into the constitution and vote of the Grand Jury so as to determine whether or not there was an improperly constituted Grand Jury. A request for such unusual relief could hardly be considered to be "boilerplate.”

. In support of the People’s contentions, the Assistant District Attorney submitted an extensive and cogent memorandum analyzing the meaning of the phrase "delay resulting from” as used in CPL 30.30. While such analysis was interesting and well documented, it was, however, beside the point and not relevant for purposes of this court’s decision.

. Cf. People v Smoot (112 Misc 2d 877 [Sup Ct, Kings County 1981], affd 86 AD2d 880 [2d Dept 1982] [the People’s failure to supply the defendant with the correct indictment, to which he was entitled pursuant to CPL 210.15 (1), was considered to be an impediment of such a nature that the People could never have effectively been ready for trial]).

. A 1984 amendment to CPL 30.30 (4) (c) now excludes the period from the issuance of a bench warrant for an absent defendant until the time that the defendant subsequently appears in court.

. It should be noted, however, that in order for such a delay to be excludable, the People must show that they have exercised due diligence in attempting to secure the defendant’s presence and that the policy of not indicting absent defendants has in some way been openly communicated to the defense Bar.

. A "valid” indictment is one which is voted by a legally constituted Grand Jury, i.e., one in which at least 12 of the members of the Grand Jury concur. (See, CPL 190.25 [1].) The 12 who have voted to indict must have heard all of the "essential and critical evidence” presented against all of the defendants. (See, People v Brinkman, 309 NY2d 974, 975 [1956].) Should fewer than 12 grand jurors who join in an indictment be present and hear the essential and critical evidence, the indictment will be defective, and dismissal will be mandated.

. New York recognizes the de facto doctrine with respect to Grand Juries formed with technical irregularities. Under this doctrine, an indictment returned by a Grand Jury will not be found invalid because of the existence of technical defects in the composition of the Grand Jury, unless a showing of fraud or prejudice to the defendant can be made. Thus, the disqualification of a grand juror for nonresidence (see, People v Baker, 75 AD2d 966 [3d Dept 1980]; People v Colebut, 86 Misc 2d 729 [Sup Ct, NY *277 County 1976]) or for conviction of a felony (see, People v White, 44 AD2d 749 [3d Dept 1974], affd 40 NY2d 876 [1976]), or the improper extension of the term of the Grand Jury (see, Matter of Pesner v County Ct. of County of Rockland, 42 AD2d 275, affd sub nom. Matter of Seidenberg v County Ct. of County of Rockland, 34 NY2d 499 [1974]; People v Heller, 120 Misc 2d 85 [Sup Ct, Kings County 1983]) will not be cause for dismissal of the indictment.

. NY Const, art I, § 6.

. The People contend that their decision to consent in defendant’s motion to dismiss was based upon the court’s expressed concern over the Grand Jury attendance records and certain aspects of the Grand Jury presentation. Although the People were of the opinion that a sufficient number of jurors heard substantially all of the evidence to warrant indictment, they maintain that it was unlikely that their position would prevail at the trial level and it is for that reason, and because they did not wish to further delay the case, that they agreed to dismissal with leave to represent. It is difficult to understand how the People can still maintain that the original indictment was valid when they have acknowledged that only seven jurors heard all of the evidence, and when this court itself examined the Grand Jury attendance records and discerned from that examination that the quorum requirements were not adhered to. The People undoubtedly knew that the indictment could not stand as a result of the improper presentation and are now attempting to excuse their conduct by intimating that their acquiescence in dismissal was to accommodate the Trial Judge who was predisposed to dismissal. This court would merely state that it is a rare case which is dismissed to accommodate a Judge if such case was actually properly presented in the first instance.

. This court is aware of the recent decisions of People v Worley and People v Hamilton (66 NY2d 523 [Dec. 26, 1985]), in which the Court of Appeals held that delays requested or consented to by a defendant which occurred prior to the conversion of a misdemeanor complaint to an information are not chargeable to the People. Nevertheless, the situation in the instant case differs markedly from that in Worley and Hamilton. In those cases, the defendants did consent to delays despite the fact that the People had failed to convert a misdemeanor complaint into an information. However, the People did and were able to eventually effectuate a conversion. In the instant case, the defendants may have in fact requested and consented to delays, but there was never anything the People could have done to "right the wrong”. The People could never have converted a jurisdictionally defective indictment into a valid one, particularly since the defect in this case originated during the initial Grand Jury presentation. This misuse of the Grand Jury proceeding was suspected by the defendants but could not have been known to them prior to any judicial intervention. The secret nature of the Grand Jury proceedings was used by the People as a way of concealing from the defendants the improprieties which occurred therein. As the Court of Appeals said in Worley and Hamilton, it is delays caused by the People that CPL 30.30 was designed to address. Knowing of the improper Grand Jury presentation, and not having agreed to dismiss and represent much earlier in the proceeding, the People must now bear the consequences of their own misconduct and inaction.

. CPL 1.20 (16) defines a "criminal action” as follows: "A criminal action (a) commences with the filing of an accusatory instrument against a defendant in a criminal court, as specified in subdivision seventeen; (b) includes the filing of all further accusatory instruments directly derived from the initial one, and all proceedings, orders and motions conducted or made by a criminal court * * * of disposing of any such accusatory instrument, or which, regardless of the court in which they occurred or were made, could properly be considered as a part of the record of the case by an appellate court upon an appeal from a judgment of conviction; and (c) terminates with the imposition of sentence or some other final disposition in a criminal court of the last accusatory instrument filed in the case.”