Titione, J.
(dissenting). I dissent. In Mulroy v Carey (43 NY2d 819), this Court refused to second guess a particular exercise of the Governor’s Executive Law § 63 superseder power. However, the Mulroy Court expressly left open the question whether such an exercise "would be beyond judicial review or correction” "in any or all circumstances” (43 NY2d, at 821, supra). In my view, the highly unusual facts of this case present precisely the circumstances in which judicial intervention is warranted to correct overreaching by the State’s chief executive officer.
The authority of the Governor to supersede a local District Attorney must logically be subject to at least the limitation that it cannot be exercised in a way that directly contravenes a specific legislative enactment. The Governor’s supersession power is based wholly on an act of the Legislature (Executive *229 Law § 63), and, as such, its exercise may be circumscribed by legislative acts of equal dignity. Moreover, unless constitutionally authorized, an executive act that contradicts a legislative plan would violate the most fundamental tenets of the separation of powers doctrine (see, Rapp v Carey, 44 NY2d 157). Thus, although I would agree with the majority that judicial review of the merits — or even the rationality — of a supersession decision would be inappropriate, I would conclude that a narrow claim that a Governor has used the supersession power in violation of law is justiciable. This case presents just such a claim.
There is no doubt about the basis for the Governor’s determination to supersede the Bronx County District Attorney in this case. There was no question of corruption or the District Attorney’s competence to manage the prosecution. Instead, the Governor was reacting to a public statement made by the District Attorney while he was campaigning for office to the effect that it was his "present intention” to utilize the "life without parole” rather than the death penalty provisions of the statute. After demanding assurances that the District Attorney would be willing to utilize the death penalty statute in appropriate cases and receiving what he deemed to be an unacceptable response, the Governor issued the challenged superseder order. By way of explanation, the Governor stated that "the case is one in which the death penalty is particularly warranted” and that the policy of the Bronx County District Attorney (as the Governor interpreted it) "threatens the validity” of death sentences imposed in other counties because of the statutory requirement that such sentences be neither excessive nor disproportionate (Executive Order No. 27, 9 NYCRR 5.27).
Thus, it is clear beyond question that the only reason for the Governor’s superseder decision in this case was his desire to substitute his own policy choices for those of the Bronx County District Attorney. In my view, however, this motive flies in the face of the evident legislative intent that the fundamental policy choice as to whether or not to seek the death penalty be made solely by the locally elected District Attorney.
The death penalty statute is, in many respects, unique. Adopted after decades of emotional debate, this statute has many singular attributes, including the unparalleled discretion it affords the prosecutor with respect to the choice of punishment. While every other Penal Law provision identifying a crime is associated with a prescribed sentencing range for the court to consider, the first-degree murder statute gives the People the power to decide in the first instance whether to *230 prosecute an otherwise qualifying homicide as a death penalty matter (see, CPL 250.40).
Whatever else may be gleaned from the provisions of Executive Law § 63-d, the terms of that statute make clear the Legislature’s assumption that death penalty prosecutions, including the initial decision under CPL 250.40 to seek the death penalty, would be handled by the local District Attorneys. Further, the absence of any statutory criteria for making CPL 250.40 decisions indicates that the Legislature intended the local District Attorneys to have unfettered discretion in this area. Significantly, nothing in the statute suggests that the determinations must be made on a case-by-case basis. Thus, under the statutory scheme, the District Attorneys may consider such factors as the heinousness of the homicide and the characteristics of both the defendants and the victims, but there is nothing to prevent them from basing their decisions ?on broader policy considerations such as the' extraordinary commitment of money and resources that death penalty prosecutions entail, the impact that the pursuit of such prosecutions might have on law enforcement in general and perhaps even the sentiments of their constituencies.
That the Legislature intended the 62 District Attorneys of this State to have such broad discretion may be inferred from the debate that preceded the death penalty statute’s adoption. In response to one Assemblywoman’s expressed concerns about the reluctance of some District Attorneys to invoke the death penalty in light of the attendant expenses, the Assembly bill’s sponsor stressed that "there’s nothing that obligates a district attorney to seek the death penalty under this bill” (Remarks of Assembly Member Vitaliano, NY Assembly Record A4843, at 481-482 [Mar. 6, 1995]).
Manifestly, the position underlying the Governor’s decision to supersede the Bronx County District Attorney — i.e., that he was required to at least consider seeking the death penalty in this individual defendant’s case — is fundamentally incompatible with both this expressed view and the over-all statutory scheme. Since the statute prescribes no particular criteria or methodology for making the CPL 250.40 choice, the Governor’s insistence on case-specific factors instead of borough- or countywide considerations cannot be justified as simple, lawful effort to "take care that the laws are faithfully executed” (NY Const, art IV, § 3). Similarly, the majority’s assumption that the Bronx District Attorney’s supposed "blanket policy” represents a refusal to exercise discretion stems from an overly constricted *231 view of the discretion that CPL 250.40 contemplates. A decision based on overriding policy considerations is as much an exercise of prosecutorial discretion as is one based on individualized factors (see, People v Bratton, 65 NY2d 675, affg 103 AD2d 368 [approving District Attorney’s office-wide policy to refrain from indicting absent defendant as a reasonable way to conserve prosecutorial resources]).
Moreover, given the unusual characteristics of death penalty prosecutions, it is difficult to believe that the Legislature would have approved the type of gubernatorial oversight of CPL 250.40 decisions that the Governor now advocates. It has been observed that the expected cost of prosecuting a death penalty case easily exceeds half a million dollars (see, Wise, Prosecutors Want Death Penalty; Qualms Voiced About Costs, Time, Training of Lawyers, NYLJ, Mar. 3, 1995, at 1, col 5, at 12, col 2 [citing remarks of Honorable Howard Relin, Dist Atty, Monroe County]). The Tioga County District Attorney has stated that "there is no way a small rural county with limited resources can now try homicide cases” (id., at 12, col 3). Even an urban District Attorney has been quoted as stating that the death penalty could be a " 'major impediment to law enforcement, because of the cost, time spent and diversion of resources’ away from prosecution of other crimes” (id., at 1, col 6 [citing remarks of Honorable Robert M. Morgenthau, Dist Atty, NY County]). Given the differences in the various counties’ fiscal resources, their law enforcement priorities, and even the basic values and experiences of their constituent communities, it is unlikely that the Legislature contemplated a system in which the Governor would be free to intervene whenever he disagrees with a local District Attorney’s policy choice to avoid the use of the death penalty. It is far more plausible to assume that the Legislature meant for the remedy, if any, for ill-advised CPL 250.40 decisions to come from the electorate.
With regard to the Governor’s expressed concern about the risk of disparities and disproportionate results arising from policy choices such as those made by the District Attorney in this case, it should be observed that the scope and meaning of the statute’s proportionality requirements — as well as their constitutional implications — have yet to be defined by this Court. Thus, the Governor’s concern is, at best, premature. In any event, to the extent that localized decision-making may lead to disparities in the imposition of the death penalty, the problem is one that inheres in the legislation itself, and it cannot be remedied by the Governor’s intervention on a case-by- *232 case basis. Indeed, such ad hoc intervention could well produce statistical imbalances and might therefore ultimately do more harm than good.
In the final analysis, it is simply too early in this State’s fledgling experiment with the death penalty to even have a meaningful discussion about the administrative pitfalls that may lead to a proportionality problem. With that consideration subtracted, the Governor’s supersession order can only be seen as a naked attempt to substitute his policy choices and those of the State Attorney-General for the preferences of the elected District Attorney. Since, in my view, that use of the supersession powers conferred by Executive Law § 63 contravenes the Legislature’s intentions with regard to the over-all administration of death penalty prosecutions in the State, I would reverse the order of the Appellate Division and hold that the Governor exceeded his authority when he replaced the Bronx County District Attorney with the Attorney-General in the Diaz prosecution.